[Cite as *State v. Goney*, 2018-Ohio-2115.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2017-CA-43 |
| | : | |
| v. | : | T.C. NO. 2017-CR-124 |
| | : | |
| BRYAN J. GONEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 1st day of June, 2018.

. . . . . . . . . . .

NATHANIEL LUKEN, Atty. Reg. No. 0087864, Greene County Prosecutor's Office, 55 Greene Street, First Floor, Xenia, Ohio 45385
  Attorney for Plaintiff-Appellee


ANDREA OSTROWSKI, Atty. Reg. No. 0075318, 20 South Main Street, Springboro, Ohio 45066
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Bryan J. Goney appeals his conviction and sentence for the following offenses: Count I, robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree; Count III, kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the second degree; and Count IV, abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree. Counts I and III were accompanied by a repeat violent offender (RVO) specification. Goney filed a timely notice of appeal with this Court on July 21, 2017.

**Procedural History**

{¶ 2} On March 15, 2017, Goney was indicted as follows: Count I, robbery; Count II, robbery; Count III, kidnapping; and Count IV, abduction. As previously stated, Counts I and III were each accompanied by RVO specifications. At his arraignment on March 22, 2017, Goney pled not guilty to all of the counts in the indictment, and the trial court ordered bond in the amount of $100,000.00.

{¶ 3} Immediately prior to the beginning of Goney's jury trial on April 10, 2017, the parties agreed that the RVO specifications attached to Counts I and III were matters for the trial court to decide at sentencing if Goney were to be found guilty of those offenses. The trial court also held a hearing pursuant to *Lafler v. Cooper,* 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), during which the State indicated, and the defense agreed, that it had made no plea offer to Goney in the instant case. Thereafter, a jury was chosen and seated, and the trial began.

{¶ 4} At the close of its case-in-chief, the State moved to dismiss Count II, robbery, in the indictment, and the trial court granted the State's motion in an entry filed on April 12, 2017. On the same day, the trial court overruled Goney's Crim.R. 29 motion for

acquittal with respect to the remaining counts in the indictment. Thereafter, Goney presented his witnesses, after which the parties made their closing arguments, and the trial court instructed the jury accordingly. On April 13, 2017, the jury found Goney guilty on all of the remaining counts.

{¶ 5} At Goney's sentencing hearing held on July 10, 2017, the trial court found him guilty of both RVOs, merged Counts III and IV, and sentenced him to an aggregate prison term of twenty years.

### Case History

{¶ 6} The incident which forms the basis for the instant appeal occurred in the early morning hours on November 13, 2016, when Melissa Wright was managing a Circle K convenience store located in Fairborn, Ohio. Shortly after 1:00 a.m., Wright decided to take a break in order to smoke a cigarette because the store was not busy. When she walked outside, Wright testified that she observed a white U-Haul moving van parked around the side of the store. At approximately 1:24 a.m., Wright indicated that she was about to extinguish her cigarette when she observed a white male carrying a black handgun exit the moving van and run towards her. Wright testified that the man was wearing blue jeans and a black hooded sweatshirt with the hood pulled over his head. Wright also testified that the man was wearing a mask, and he was brandishing a black handgun. Wright testified that she observed that the man was wearing only one glove on his left hand. Wright further testified that she knew the suspect was white because she could see one of his uncovered hands and the skin around his eyes that was not covered by the mask. Wright also testified that the suspect was wearing a distinctive pair of tennis shoes.

{¶ 7} The man, later identified as Goney, ordered Wright back inside the store. Wright testified that while he pointed the gun at her, Goney demanded all of the money in the cash register. Wright testified that Goney put the money, totaling $61.00, in a black bag that he was carrying with him. Goney also ordered Wright to give him the money in the store's second cash register and a blue coupon folder, but she showed him that neither the second register nor the folder contained any money. At this point, Goney ordered Wright into a back room in the store. Wright testified that she was frightened because she believed that Goney would shoot her if she did not comply with his orders. After Wright was forced into the back room, which was actually the store's office, Goney left the convenience store. When she was confident that Goney had indeed left the store, Wright testified that she called 911 to report the robbery. Significantly, Wright testified that shortly before Goney robbed the store, a young woman, later identified as Magen Branham, entered the store and purchased a can of Pepsi at approximately 12:52 a.m. Wright testified that the store she managed was equipped with video surveillance which recorded the robbery.

{¶ 8} At approximately 1:29 a.m., Fairborn Police Officer Chris Sopher was dispatched to the convenience store to investigate the robbery. Officer Sopher spoke with Wright at the Fairborn Circle K, and she provided him with a description of the suspect, as well as the U-Haul van in which the suspect fled the scene. Officer Sopher contacted dispatch and relayed the details of the robbery and a description of the suspect provided by Wright. Officer Sopher testified that after contacting dispatch, he took photographs of the scene and also viewed the video surveillance recording of the robbery.

{¶ 9} Thereafter, Fairborn Police Officer Dan Pence was informed by dispatch that

a robbery had recently occurred at a Circle K in Fairborn, and the suspect fled the scene in a white U-Haul van. Officer Pence testified that he first attempted to locate the U-Haul van in the area nearby the Fairborn Circle K, but he was unsuccessful. While Officer Pence was searching, however, dispatch informed him that a white U-Haul van matching Wright's description had been located at a nearby Circle K in Xenia, Ohio. After watching the surveillance video of the alleged robbery at the Fairborn Circle K, Fairborn Police Officer Dan Foreman relayed a description of the suspect's clothing to Officer Pence.

{¶ 10} Officer Pence responded to the Circle K location in Xenia where he came into contact with Greene County Sheriff's deputies who had detained a man and a woman who had arrived at the store in a white U-Haul van. Upon arriving at the Circle K in Xenia, Officer Pence observed a white U-Haul van parked next to the gas pumps. Officer Pence testified that he looked through the windows of the van and observed a black hooded sweatshirt similar to the one described by Wright. Officer Pence testified that he also observed a navy t-shirt that could have been used to obscure someone's face. Officer Pence also testified that the shoes that Goney was wearing at the Xenia Circle K were similar to the shoes worn by the suspect who robbed the Fairborn Circle K. Goney was also wearing blue jeans.

{¶ 11} The State also presented the testimony of Crystal Lodge, who was working at the Xenia Circle K on November 13, 2016. Lodge testified that at approximately 1:45 a.m., she observed a white U-Haul van drive up to the gas pumps in front of the convenience store. Lodge testified that a man and woman, later identified as Goney and Magen Branham, exited the van, entered the store, and began shopping. At approximately the same time, Greene County Sherriff's Deputy Jeffrey Thomas was on

routine patrol in the area when he observed the white U-Haul van parked by the gas pumps at the Xenia Circle K. Deputy Thomas testified that the van matched the description of the vehicle used in the recent reported robbery of the Fairborn Circle K. Upon looking in the window of the van, Deputy Thomas also observed a black hooded sweatshirt matching the description of the one worn by the suspect in the Fairborn Circle K robbery.

{¶ 12} Deputy Thomas testified that he approached Goney and Branham as they were exiting the Xenia Circle K. Deputy Thomas asked the pair if the U-Haul van belonged to them, and Goney stated that it did not. Deputy Thomas ordered Goney and Branham to sit down on the curb in front of the store. At that point, Deputy Jessica Kessel arrived at the Xenia Circle K to assist Deputy Thomas. While Deputy Thomas went inside the store to secure the area, Deputy Kessel and Deputy Thomas Sexton, who had just arrived, patted Goney down. Deputy Kessel testified that they retrieved a key to the U-Haul van, a can of pepper spray, and approximately $90.00 in cash. Deputy Kessel then placed Branham in the back of her cruiser, and Deputy Sexton placed Goney in the back of his cruiser. Deputy Sexton testified Goney took his tennis shoes off while sitting in the back of the cruiser. Deputy Sexton also testified that he asked Goney if the U-Haul van belonged to him, and Goney stated that the van belonged to his "baby's mama." Goney also informed Deputy Sexton that Branham was a friend of his sister. We also note that Officer Foreman testified that the tennis shoes that Goney had taken off in Deputy Sexton's cruiser were similar to the shoes worn by the suspect in the robbery of the Fairborn Circle K.

{¶ 13} The State also presented the testimony of Magen Branham, the female who

was arrested with Goney at the Xenia Circle K. Branham testified that Goney picked her up in a white U-Haul van at 4:30 p.m. on November 12, 2016. Thereafter, Branham testified that they drove around in the van for several hours. Branham testified that during the drive, Goney stated that he needed to rob someone in order to make some money. Additionally, while they drove around, Branham snorted heroin, and Goney used methamphetamine.

{¶ 14} After midnight on November 13, 2016, Branham testified that she and Goney drove to the Circle K in Fairborn. Goney told Branham to go into the convenience store in order to check for surveillance cameras and to see who was working. Branham testified that she went into the store and purchased a can of Pepsi. After making her purchase, Branham got back in the van, and she and Goney drove around for a short time in order to formulate an escape route. Goney and Branham returned to the convenience store and parked nearby. Branham testified that Goney put one glove on, wrapped a blue t-shirt around his head, and pulled the hood of his black sweatshirt over his head. Goney then grabbed a black bag, exited the vehicle, and ran into the store. Branham testified that she did not know that Goney was carrying a gun. Notably, Branham testified that the black bag used by Goney was not her purse. Shortly thereafter, Goney returned to the van, and they drove away. Branham testified that Goney told her that he ordered the clerk into the back room of the store. After leaving Fairborn, Branham testified that they drove to the Circle K in Xenia, at which point Goney changed his clothes before going in the convenience store. As previously stated, it was at the Xenia Circle K that Goney and Branham were apprehended by the police.

{¶ 15} During her testimony, Branham admitted that she provided police with a

false name when she was arrested and taken into custody.[1] Branham also acknowledged that she entered into a deal with the State whereby she would plead guilty to tampering with records and identity fraud, and her robbery charge would be dismissed. Branham also testified that the State had agreed to recommend that she receive community control with inpatient drug treatment. Finally, Branham testified that she had never met Goney's sister.

**{¶ 16}** Fairborn Police Detective Ryan Whittaker testified that he interviewed Branham in the days following the robbery, and her statements to him were consistent with her trial testimony. Detective Whittaker further testified that he obtained a search warrant for the U-Haul van in which he discovered a Pepsi can and two crumpled dollar bills in the center console. Detective Whittaker testified that on the driver's side of the van he found a black hooded sweatshirt, a black bag, a blue t-shirt, and a single left-handed glove. Detective Whittaker also discovered a black BB gun that looked like a real handgun between the seats next to the black bag.

**{¶ 17}** Called by the State, Cortney Erisman testified that Goney was her boyfriend and that she is the mother of his child. Erisman also testified that she and Goney rented a white U-Haul van together on November 12, 2016. The rental contract required that the van be returned the following day on November 13, 2016. Erisman testified that she was unable to return the van on that date because it was no longer in her possession. Erisman testified that she did not know Magen Branham, nor did she let anyone borrow the van. On cross-examination, Erisman testified that she and Goney arrived at Goney's

---

[1] The record establishes that Magen Branham identified herself to police as "Loretta Branham," which is actually the name of her cousin.

sister's house in Xenia in the U-Haul van at approximately 5:00 p.m. on November 12, 2016. Goney's sister was identified as Denise Goney. Erisman also testified that Goney was with her until they went to bed that night between 11:00 p.m. and 12:00 a.m. Erisman and her daughter slept on a bed while Goney slept on the floor next to the bed. Erisman testified that she did not hear Goney get up during the night, nor was she aware that he was not at his sister's house until approximately 11:00 a.m. on November 13, 2016.

{¶ 18} The defense presented the testimony of Kelli Forand, who testified that she was Magen Branham's cell mate in November of 2016. Forand testified that Branham stated that she was having an affair with Goney. Forand also testified that Branham stated that she committed the robbery of the Fairborn Circle K with her boyfriend. Forand testified that Branham, however, never referred to her boyfriend by name.

{¶ 19} The defense also presented the testimony of Jill Underwood, Goney's mother. Underwood testified that at approximately 8:30 p.m. on the night of November 12, 2016, she went to Denise Goney's house in Xenia. Underwood testified that, when she arrived there, Goney was present at the house with Erisman and their daughter. Underwood also testified that when she went outside to smoke with Goney, she observed that the white U-Haul van was not in the driveway. Underwood testified that Goney went to bed at approximately 11:00 p.m. on the night of November 12, 2016. Underwood testified that she saw Goney in the hallway of the house at approximately 1:15 a.m. Shortly thereafter, Underwood went to sleep on the couch in the living room.

{¶ 20} Underwood testified that she was awakened at approximately 1:40 a.m. when she heard a car horn from the front of the house. Underwood then observed

Goney leave the house out of the front door. Underwood testified that she walked to the window and observed the U-Haul van parked in the driveway. Underwood testified that she observed Goney talking to an unidentified male in the driver's seat while what appeared to be a female individual sat in the front passenger seat. While Underwood looked on, another vehicle pulled up behind the van. Underwood testified that the unidentified male in the driver's seat exited the van and entered the second vehicle, which then drove away. Underwood testified that Goney, who she claimed was not wearing any shoes, then got into the driver's seat of the U-Haul van and drove away at approximately 1:42 a.m.

{¶ 21} Thus, based upon the alibi testimony provided by Underwood, Goney could not have been the individual who robbed the Fairborn Circle K at 1:24 a.m. on November 13, 2016, because he was allegedly at his sister's house when the crime occurred. We note that neither Forand nor Underwood came forward prior to trial with any information regarding their knowledge of Goney's whereabouts when the robbery occurred at the Fairborn Circle K on November 13, 2016.

{¶ 22} Goney's appeal is now properly before us.

{¶ 23} Goney's first assignment of error is as follows:

THE TRIAL COURT ERRED IN IMPOSING A DEFINITE PRISON TERM

FOR A REPEAT VIOLENT OFFENDER SPECIFICATION.

{¶ 24} In his first assignment, Goney contends that the trial court erred when it imposed a definite prison term for the RVOs. Specifically, Goney argues that pursuant to R.C. 2929.14(B)(2)(b), the jury, not the trial court, was required to find that Goney attempted to cause, threatened to cause, or actually caused serious physical harm before

the trial court could impose sentence for the RVO specifications.

{¶ 25} R.C. 2929.14(B)(2)(b) states in pertinent part:

(b) The court shall impose on an offender the longest prison term authorized or required for the offense and shall impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offender within the preceding twenty years has been convicted of or pleaded guilty to three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code * * *.

(iii) The offense or offenses of which the offender currently is convicted * * * [is] any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

{¶ 26} Based upon the language in R.C. 2929.14(B)(2)(b)(iii), Goney argues that the jury, not the trial court, was required to find beyond a reasonable doubt that he attempted to cause or threatened to cause serious physical harm, or that his actions resulted in serious physical harm. Each crime for which Goney was convicted required him to be found guilty of inflicting, attempting to inflict, or threatening to inflict only physical harm, not serious physical harm.

{¶ 27} Goney was ultimately convicted of Count I, robbery (R.C. 2911.02(A)(2)), Count III, kidnapping (R.C. 2905.01(A)(2)), and Count IV, abduction (R.C. 2905.01(A)(2)). As previously stated, the trial court merged Count IV into Count III. The trial court sentenced Goney to a mandatory eight years in prison for robbery. Upon finding Goney to be a repeat violent offender, the trial court imposed an additional two years in prison to be served consecutively to his eight-year robbery sentence. With respect to his sentence for kidnapping, the trial court sentenced Goney to a mandatory eight years in prison. Again, finding Goney to be a repeat violent offender, the trial court imposed an additional two years in prison to be served consecutively to his eight-year kidnapping sentence. The trial court then ordered that Goney's sentences for Counts I and III be served consecutively to one another, for an aggregate sentence of twenty years in prison.

{¶ 28} R.C. 2911.02(A)(2) states in pertinent part:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

{¶ 29} R.C. 2905.01(A)(2) states in pertinent part:

(A) No person, by force, threat, or deception, * * * , shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(2) To facilitate the commission of any felony or flight thereafter[.]

{¶ 30} Initially, we note that we agree with the Eleventh District Court of Appeals in *State v. Payne*, 11th Dist. Lake No. 2004-L-118, 2005-Ohio-7043, in which the court held that in order to be constitutionally permissible under *Apprendi v. New Jersey*, 530

U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), "any fact, *other than a prior conviction*, must be determined by a jury or admitted by the appellant." (Emphasis sic.) *Id.* at ¶ 114.   Thus, any fact other than a prior conviction that is found by a jury or admitted by the defendant complies with *Apprendi,* regardless of whether it relates to a prior or current conviction. *State v. Wilson*, __ N.E.3d __, 2018-Ohio-902, ¶ 90 (11th Dist.).

{¶ 31} It is undisputed that in the instant case, Goney did not admit to any allegations that he attempted to cause or threatened serious physical harm, or that his actions resulted in serious physical harm with respect to any of the offenses for which he was convicted.   Accordingly, under *Apprendi*, Goney was entitled to have a jury decide whether he should be designated as a repeat violent offender. *See State v. Bishop*, 5th Dist. Stark No. 2014-CA-190, 2015-Ohio-3023, ¶ 19–21.

{¶ 32} Nevertheless, as the U.S. Supreme Court stated in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), "nothing prevents a defendant from waiving his *Apprendi* rights [to a jury determination of every element of the charge]. * * * Even a defendant who stands trial may consent to judicial fact-finding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial." *Id*. at 310.   While the Sixth Amendment generally prohibits judicial fact-finding, there is an "exception for prior criminal convictions *and the defendant's consent to judicial fact-finding*." *State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, 915 N.E.2d 292, ¶ 30, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 7.

{¶ 33} Prior to trial, Goney filed a motion in limine in which he noted that pursuant to R.C. 2941.149(B), "[t]he court shall determine the issue of whether an offender is a repeat violent offender."   Therefore, according to Goney's liminal motion, "[t]he issue of

whether the Defendant is a repeat violent offender is a question for the court, not the jury." Accordingly, Goney requested that the trial court determine whether he should be designated as a RVO. The trial court granted Goney's motion in limine at a hearing where Goney was present. Thus, Goney consented to judicial fact-finding regarding his designation as a repeat violent offender.

{¶ 34} That is not the end of our analysis, however. In the instant case, although the trial court was asked to determine if Goney was guilty of the RVO specifications, the trial court was still required to make all of the appropriate findings based upon the evidence before enhancing Goney's sentence as an RVO. The trial court was only permitted to enhance Goney's sentence relative to the RVO specifications if, as trier of fact, the trial court found appellant's actions threatened, attempted, or resulted in "serious physical harm" to the victim. *See State v. Brown*, 10th Dist. Franklin Nos. 10AP-836 and 10AP-845, 2011-Ohio-3159, ¶ 23, fn. 2 (holding the trial court properly enhanced the defendant's sentence for second-degree felony robbery only because the indictment for the attached RVO specification alleged "serious physical harm" and the jury instructions for the robbery count included a finding of "serious physical harm"); *State v. Davis*, 7th Dist. Mahoning No. 08 MA 152, 2009-Ohio-5079, ¶ 36 (holding that, although the defendant may have in fact threatened to cause serious physical harm to the robbery victims, only the trier of fact was permitted to make such a finding for purposes of penalty enhancement).

{¶ 35} Initially, we note that nowhere in Goney's indictment did the State allege that he attempted to cause or threatened "serious physical harm," or that his actions resulted in "serious physical harm" with respect to any of the offenses for which he was

convicted. Moreover, the jury instructions contain no mention of "serious physical harm." Most importantly, the trial court did not make a finding that Goney attempted to cause or threatened "serious physical harm" against the complaining witness, Melissa Wright, before finding him guilty of the RVO specifications, and the trial record contains no threat of serious physical harm. In fact, at the sentencing hearing held on July 10, 2017, the trial court stated the following:

> The Court: As recorded in the Court's repeat violent offender entry, the Court found the Defendant to be a repeat violent offender, and pursuant to R.C. 2929.14(B)(2)(b) finds the following: The Defendant is convicted of a R.C. 2941.149 specification that the Defendant is a repeat violent offender.

> The offense the Defendant is currently convicted of is a second degree felony that is an offense of violence, *and the trier of fact finds that the offense involved an attempt or a threat to cause physical harm to a person or result in serious physical harm to a person.*

(Emphasis added.)

{¶ 36} Here, we find that the trial court made the proper findings with respect to R.C. 2929.14(B)(2)(b)(i) and (ii). Specifically, the trial court found that Goney was "convicted of a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender," and he "within the preceding twenty years has been convicted of or pleaded guilty to three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code * * *." *Id.*

{¶ 37} However, with respect to R.C. 2929.14(B)(2)(b)(iii), the record establishes

that the trial court failed to find that Goney attempted to cause or threatened "serious physical harm" against a person before finding him guilty of the RVO specifications. Rather, as noted above, the trial court found "that the offense involved an attempt or a threat to cause *physical harm* to a person." (Emphasis added.) Simply put, "physical harm" and "serious physical harm" represent two distinct legal standards and cannot be used interchangeably. Therefore, pursuant to the clear language in R.C. 2929.14(B)(2)(b)(iii), the trial court failed to make the proper findings. Furthermore, although the trial court ostensibly found "that the offense involved * * * *serious physical harm* to a person," there is no evidence in the record to support such a finding, with regard to Wright based on the evidence surrounding the robbery of the Fairborn Circle K. Thus, because the trial court failed to make the proper findings pursuant to R.C. 2929.14(B)(2)(b)(iii), it erred when it found Goney guilty of the RVO specifications.

{¶ 38} Goney's first assignment of error is sustained, and each of his two-year sentences for RVO specifications are vacated.

{¶ 39} Goney's second assignment of error is as follows:

THE TRIAL COURT ERRED BY NOT MERGING SENTENCING FOR ALLIED OFFENSE COUNT 1 AND COUNT 3.

{¶ 40} In his second assignment, Goney argues that the trial court erred when it failed to merge Count I, robbery, with Count III, kidnapping. Initially, we note that Goney did not raise the issue of merging Counts I and III before the trial court at sentencing. Accordingly, we review Goney's merger argument for plain error. In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147,

2015-Ohio-624, ¶ 22; Crim.R. 52(B). Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶ 41}** R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 42}** The Ohio Supreme Court clarified the applicable standard when determining whether offenses merge as allied offenses of similar import. *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892.

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 30–31.

**{¶ 43}** Recently, in *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, we stated the following:

[T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson* [, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d

Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the Ohio Supreme Court applied in *Earley*. We see nothing in *Ruff* that alters or undermines the foregoing analysis about [defendant's] commission of murder and aggravated robbery involving the same conduct committed with the same animus. For the reasons set forth above, we conclude that the two offenses were not committed separately and were not committed with a separate animus or motivation. These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25; see also *Id.* at ¶ 30–31.

*Wood* at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51 & 60 (2d Dist.).

{¶ 44} Goney was convicted of Count I, robbery, in violation of R.C. 2911.02(A)(2), which states in pertinent part:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

{¶ 45} Goney was also convicted of Count III, kidnapping, in violation of R.C. 2905.01(A)(2), which states in pertinent part:

(A) No person, by force, threat, or deception, ***, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(2) To facilitate the commission of any felony or flight thereafter[.]

{¶ 46} Implicit in every robbery is a kidnapping insofar as an offender at least temporarily must restrain the victim to commit a theft. *State v. Johnson*, 2d Montgomery No. 26323, 2015–Ohio–347, ¶ 14, citing *State v. Jenkins*, 15 Ohio St.3d 164, 198, 473 N.E.2d 264 (1984), fn. 29. Kidnapping and robbery are not always allied offenses of similar import subject to merger, however, because they can involve distinct acts. Even when they involve the same conduct, they also each can involve a separate animus. "A separate animus for kidnapping exists where (1) 'the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance independent of the other offense,' or (2) 'the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime.' " *Id.* at ¶ 14, citing *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1975), syllabus.

{¶ 47} In the instant case, we see no error in the trial court's failure to merge the kidnapping involving Wright with the robbery. The record establishes that Goney ordered Wright inside the convenience store, and while he pointed a BB gun at her, Goney demanded all of the money in the cash register. Wright testified that Goney put the money in a black bag that he was carrying with him. Goney also ordered Wright to give him the money in the store's second cash register and a blue coupon folder, but she showed him that neither the second register nor folder contained any money. At that

point, Goney ordered Wright into a back room in the store where she remained until Goney had fled the scene.

{¶ 48} In *Logan*, the Ohio Supreme Court recognized that the "primary issue" when determining whether kidnapping merges with another offense "is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *Logan* at 135. In our view, the act of ordering Wright into the back room of the store constituted a separate and distinct act beyond the restraint implicit in every robbery. The robbery itself had concluded at the point when Goney ordered Wright into the back room. The act of ordering Wright into the back room was not merely incidental to the robbery itself, and it was substantial enough to have significance independent of the completed robbery. *State v. Grable*, 2d Dist. Clark No. 2014-CA-52, 2015-Ohio-788, ¶ 15. Therefore, we see no error in the trial court's failure to merge the robbery with the kidnapping charge.

{¶ 49} Goney's second assignment of error is overruled.

{¶ 50} Goney's third assignment of error is as follows:

APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 51} In his third assignment, Goney argues that he received ineffective assistance "through an accumulation of defects in trial counsel's failure to properly investigate his client's case and his failure to communicate a plea offer." Specifically, Goney contends that his counsel was ineffective for failing to be aware of the nature of Branham's Miami Township arrest warrant and his failure to discover the cell phone found in Branham's brown purse, marked as State's Exhibit 55. Lastly, Goney argues that his

counsel was deficient for failing to inform him of an alleged plea deal offered by the State after the trial began.

> We review the alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.

(Internal citation omitted.) *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008–Ohio–493, ¶ 31.

{¶ 52} Regarding defense counsel's alleged failure to properly investigate his or her client's case, the Ohio Supreme Court has noted:

> It is axiomatic that effective representation of a client carries with it a burden to investigate. "* * * [C]ounsel has a duty to make reasonable investigations

or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, supra, 466 U.S. at 691, 104 S.Ct. at 2066. See, also, *Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. *Bradley* at 146.

**Branham's Arrest Warrant**

{¶ 53} During trial, Branham testified that she initially provided the police with a false name upon being arrested at the Xenia Circle K. Branham testified that she provided a false name because she was attempting to avoid triggering a warrant that she believed was active in Miami Township. During cross-examination, Branham was asked by defense counsel for what offense the alleged warrant was issued. The State objected, and a bench conference was held. During the bench conference, defense counsel was unable to inform the trial court what the warrant was for, and the State's objection was sustained. Goney argues that if his counsel had been aware of the nature of Branham's warrant, he could have used it to impeach her testimony.

{¶ 54} Upon review, we conclude that the record establishes that Goney's counsel vigorously cross-examined Branham. Defense counsel was able to impeach Branham with several inconsistencies. On the record before us, we cannot find defense counsel's performance to be ineffective because he did not know the nature of a warrant which may or may not have even existed. Goney's argument that his counsel could have used the warrant to further impeach Branham's testimony is also somewhat speculative since the

warrant, assuming it actually existed, could have been for failure to appear for a traffic offense or of such a nature to render it inadmissible in the first instance. Thus, we cannot find that defense counsel's lack of knowledge regarding the nature of Branham's warrant would have altered the outcome of the trial.

### Contents of State's Exhibit 55

{¶ 55} The record establishes that after deliberations had begun, the jurors notified the trial court that they had opened State's Exhibit 55, Branham's purse, and found an envelope containing a cell phone and some drug paraphernalia. The envelope was signed by Detective Whittaker. Goney moved for a mistrial, but his motion was denied.

{¶ 56} On appeal, Goney argues that his counsel was deficient for failing to locate the phone in the purse prior to trial, because he could have acquired the cell phone records which would have allowed him to track Branham's location throughout the night of November 12, 2016, and the early morning hours of November 13, 2016. Goney argues that Branham's location during the relevant time frame was a central part of his defense, and the failure of his counsel to find and obtain the cell phone was clearly ineffective and could have changed the outcome of the trial.

{¶ 57} Upon review, we conclude that Goney has failed to establish that the outcome of the trial would have been any different if his counsel had discovered the cell phone prior to trial. Initially, we note that although the cell phone was found in Branham's purse, it is unknown whether the phone actually belonged to her. Additionally, Goney is assuming that the cell phone was in Branham's purse and with Branham through the entire time during which the robbery occurred. It is also possible that the cell phone, if it

does in fact belong to Branham, would serve to corroborate her testimony. Goney is merely speculating that the cell phone would help his case and that his attorney would have sought an analysis of its GPS data if it existed. For these reasons, we find that Goney's counsel's failure to locate the cell phone prior to trial is insufficient to create a reasonable probability that the result of the trial would have been different.

### Failure to Inform Goney of Plea Deal

{¶ 58} Here, Goney argues that his counsel was ineffective for failing to inform him of a plea deal allegedly offered by the State after the trial had begun. As previously noted, prior to the beginning of the trial, the trial court held a *Lafler* hearing during which the State and defense counsel agreed that no plea offers had been made in the instant case.

{¶ 59} However, at the sentencing hearing, Goney informed the trial court that Detective Whittaker had approached him at some point during the trial and asked him why he had not taken the deal. Goney further alleged that there was an offer to plead guilty to one count of robbery, a felony of the second degree, without an RVO specification. Goney then went on to ask all of the parties present at the sentencing hearing on the record whether the plea offer ever actually existed. Neither the State nor defense counsel answered his question. Other than Goney's bare assertions to the contrary, there is no evidence in the record which supports his claim that the plea deal ever existed.

{¶ 60} Goney's claim regarding the existence of a plea deal offered by the State after the trial began is based upon evidence outside the record. A direct appeal can only refer to evidence in the trial record. *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d

1150 (2001) (if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal); *State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978) (the appellate court is limited to what transpired as reflected by the record on direct appeal).

**{¶ 61}** Matters outside the record must be addressed in a petition for post-conviction relief. "[T]he availability of the post relief conviction route removes claims based on matters outside the record from the form of extraordinary circumstances demonstrating a manifest injustice." *State v. Laster*, 2d Dist. Montgomery No. 19387, 2003–Ohio–1564, ¶ 8. Goney's argument that his counsel was ineffective for failing to inform him of the alleged plea deal offered by the State after the trial began pertains to matters outside the record, and is therefore more suited for a petition for post-conviction relief.

**{¶ 62}** Goney's third assignment of error is overruled.

**{¶ 63}** Goney's fourth assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR A MISTRIAL.

**{¶ 64}** In his fourth assignment, Goney contends that the trial court erred when it overruled his motion for a mistrial based upon the U.S. Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Goney argues that the State failed to disclose exculpatory evidence, to wit: the cell phone found by the jury in Branham's purse (State's Exhibit 55) during deliberations.

**{¶ 65}** As this Court has previously noted:

In *Brady*, the United States Supreme Court held that "the suppression by

the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.   *See also, State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph four of the syllabus; *State v. Aldridge*, 120 Ohio App.3d 122, 145, 697 N.E.2d 228 (2d Dist.1997).   Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

*State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 16.

**{¶ 66}** Thus, in order to establish a *Brady* violation, the petitioner must demonstrate that (1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defendant; and (3) the evidence was material.

**{¶ 67}** As previously discussed in our analysis of his third assignment, Goney has failed to establish that the outcome of the trial would have been any different if he had been aware of the cell phone prior to trial.   Goney claims that the cell phone could potentially exonerate him if the records establish that Branham was in a different location than what she testified to at trial.   However, the cell phone was potentially useful, not materially exculpatory, because no more can be said other than that the cell phone could have been analyzed and examined, the results of which might have exonerated Goney. Other than being found in an evidence envelope in Branham's purse, State's Exhibit 55, there was is no evidence that the phone even belonged to her or was retrieved from her on the night of her arrest.   Furthermore, Goney is assuming that the cell phone was in

Branham's purse and with Branham throughout the entire time during which the robbery occurred. It is also possible that the cell phone, if it does in fact belong to Branham, would serve to corroborate her testimony. Simply put, Goney is speculating that the cell phone would change the outcome of the trial. Therefore, we cannot say that the cell phone contents were not materially exculpatory under *Brady*, and there is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Accordingly the trial court did not err when it overruled Goney's motion for a mistrial.

{¶ 68} Goney's fourth assignment of error is overruled.

{¶ 69} Because they are interrelated, Goney's fifth and sixth assignments of error will be discussed together as follows:

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT

OF THE EVIDENCE.

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S CRIMINAL

RULE 29 MOTION BECAUSE THERE WAS INSUFFICIENT EVIDENCE

TO SUPPORT THE CHARGES.

{¶ 70} In his fifth assignment, Goney contends that the trial court erred when it overruled his Crim.R. 29 motion for acquittal made at the close of evidence. In his sixth assignment, Goney argues that his convictions were against the manifest weight of the evidence.

{¶ 71} Although the State does not raise the issue, we note that the record fails to establish that Goney renewed his Crim.R. 29 motion for acquittal at the close of all the evidence in his jury trial. Here, Goney moved for acquittal at the close of the State's

case-in-chief, the trial court denied the motion, and defense counsel then presented the testimony of two witnesses for the defense. After resting, the printed record provided to this Court does not indicate that Goney renewed his Crim.R. 29 motion for acquittal. Goney has therefore failed to preserve his insufficiency argument by not renewing it at the close of evidence. *See State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 42 (appellant preserved his insufficiency argument by making an unsuccessful Crim.R. 29 motion for acquittal at the close of evidence at trial). It is generally accepted in Ohio that if counsel fails to make and renew a Crim.R. 29 motion during a jury trial, the issue of sufficiency is waived on appeal. *State v. Richardson*, 75 N.E.3d 831, 2016-Ohio-8081, ¶ 16 (2d Dist.). However, even if Goney had renewed his Crim.R. 29 motion, we conclude that his argument that his convictions for robbery, kidnapping, and abduction were based upon insufficient evidence lacks merit.

{¶ 72} Crim.R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim.R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher*, 6th Dist. Lucas No. L–06–1039, 2007-Ohio-3960, ¶ 20. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007-CA-99, 2008-Ohio-4636, ¶ 12.

{¶ 73} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-

6046, 837 N.E.2d 315, ¶ 69. "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

**{¶ 74}** The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

**{¶ 75}** This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

**{¶ 76}** Initially, we note that Goney concedes that the State adduced sufficient evidence at trial for establishing the elements of the offenses for which he was convicted.

Simply put, he does not dispute that a robbery, kidnapping, and abduction occurred at the Fairborn Circle K on November 13, 2016. Goney is only arguing that the State failed to prove beyond a reasonable doubt that he was the individual who committed the offenses. Specifically, Goney contends that the only State's witness who could identify him as the perpetrator of the charged offenses was Magen Branham. Branham, Goney argues, was an unreliable witness who lied about her identity to the police and had a drug problem. Goney further argues that Branham lied about Goney's involvement in the robbery in order to receive a favorable plea deal. Goney argues that the testimony of Forand, Branham's cell mate, and his mother, Underwood, was entirely more credible and provided him with a solid alibi regarding when the robbery occurred.

{¶ 77} Having reviewed the record, we find no merit in Goney's manifest-weight challenge. It is well-settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. Here the jury quite reasonably could have credited the extensive testimony provided by all of the State's witnesses, including Magen Branham, evaluated said evidence and all reasonable inferences to the elements of the offenses, and thereafter, found Goney guilty. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice has occurred.

{¶ 78} Goney's fifth and sixth assignments of error are overruled.

{¶ 79} Goney's first assignment of error having been sustained, both of his two-year sentences for the RVO specifications are reversed and vacated. In all other respects, the judgment of the trial court is affirmed, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.


Copies mailed to:

Nathaniel Luken
Andrea Ostrowski
Hon. Michael A. Buckwalter